**SKF Industries, Inc. and Liberty Mutual Insurance Company *v.* Carl Cody, Jr., Deceased— Clara Cody, Claimant.**

20

Argued January 4, 1971, before President Judge Bowman and Judges Kramer and Mencer, sitting as a panel of three.

*Roger B. Wood,* with him *Joseph R. Thompson,* for appellant.

*Stanley P. Stern,* with him *Stern & Tractman,* for appellee.

Opinion by Judge Kramer, April 14, 1971:

This is an appeal from an order of the Court of Common Pleas of Philadelphia County denying the appeal of SKF Industries, Inc. (employer-appellant) and

Liberty Mutual Insurance Company (insurance carrier-appellant). The court below affirmed the decision of the Workmen's Compensation Board (Board) which had affirmed the adjudication of the referee granting an award to the claimant, Clara Cody (appellee) and her children.

This matter was instituted by the filing of a fatal claim petition with the Board by the widow of Carl Cody, Jr., deceased, who for ten years had been an employee of the appellant employer, and who, immediately prior to his death, had held the position of chauffeur.

The referee found that on March 10, 1966, the decedent was struck on the head by an overhead garage door at his place of employment. This resulted in severe headaches requiring medical treatment by his physician and hospitalization on two occasions, ultimately resulting in his death on April 10, 1966. The referee found that the cause of death was a sub-dural hematoma and infection resulting from the head trauma.

The appellants present two basic issues in advancing their argument that the Board abused its discretion and committed an error of law. First, appellants state that it was improper to permit the testimony of the widow and the family physician (over the objection of the appellants) concerning statements made by the decedent to them related to the circumstances of the trauma in question. Appellants state that this testimony did not fall within the *res gestae* exception to the hearsay rule. Secondly, the appellants argue that it was improper to admit those portions of the hospital records based upon statements made by the patient-decedent to doctors and various hospital personnel. These alleged objectionable statements concerned the circumstances leading up to and resulting in the trauma in question.

The scope of appellate review in workmen's compensation cases was stated by the Superior Court in *Heinzl v. Jones and Laughlin Steel Corporation,* 157 Pa. Super. 454, 456, 43 A. 2d 635, 636 (1945): "It is the duty of this Court to examine the record to determine whether the findings of fact made by the referee and the board are supported by legally competent evidence, and whether on such findings the law has been properly applied. Smith v. Welsh Bros., 102 Pa. Superior Ct. 54, 156 A. 598 (1931); Watkins v. Pittsburgh Coal Company, 278 Pa. 463, 123 A. 461 (1924); Melini v. Saltsburg Coal Mining Company et al., 119 Pa. Superior Ct. 356, 181 A. 330 (1935) and not to weigh the evidence to determine its probative value. Bradley v. Pioneer Oil Company, 109 Pa. Superior Ct. 585, 167 A. 660 (1933). The findings of the referee and the board have the effect of a verdict of a jury, and we must review the evidence and the inferences therefrom in the light most favorable to the claimant. Melini v. Saltsburg Coal Mining Company et al., supra."

In *Stever v. Rea & Derick,* 206 Pa. Super. 158, 212 A. 2d 90, 93 (1965), the court said: "Upon appeal it is the duty of the court to review the evidence to determine whether the board's findings are supported by evidence sufficient to convince a reasonable mind to a fair degree of certainty, but the court may not weigh the evidence and substitute its judgment for that of the board."

We next look to the question of whether hearsay evidence may be used in a workmen's compensation case, and we find in the case of *Giordano v. Bianco,* 204 Pa. Super. 219, 223, 203 A. 2d 396, 398 (1964) that the court said: "In Nesbit v. Vandervort and Curry, 128 Pa. Super. 58, 62, 193 A. 393, 395 (1937), this Court said: 'While awards in workmen's compensation cases cannot rest wholly on hearsay evidence,

. . . the Workmen's Compensation Law, by its very nature, contemplates liberality in the admission of proofs and the inferences reasonably to be drawn therefrom . . . and where the facts are sufficiently established by circumstantial evidence, hearsay testimony, not inconsistent therewith, if relevant and material to the fact in issue . . . may be considered for the additional light, if any, it throws on the matter.' "

The test of admissibility of a declaration as *res gestae* is whether circumstances were such as to preclude premeditation and consideration. *Weshalek v. Weshalek,* 379 Pa. 544, 109 A. 2d 302 (1954). Although there is a need for spontaneity of declaration we hold that time alone is not the sole criterion to be employed in determining whether or not a particular declaration is part of the *res gestae.* No fixed measure of time or distance from the main occurrence can be established as a rule to determine what shall be a part of the *res gestae,* but each case must necessarily depend upon its own circumstances. *Whiting v. Fibber and Mollie Tearoom,* 154 Pa. Super. 106, 35 A. 2d 598 (1944).

In the case of *Watson v. A. M. Byers,* 140 Pa. Super. 245, 14 A. 2d 201 (1940), an unwitnessed accident occurred to the decedent who thereafter left his job for the day, meeting several people en route home and remaining silent concerning the alleged accident. He did mention it later in the day to his wife, stepson and doctor. The court there held that although time is not the sole criterion for determining what may be included within the *res gestae,* nevertheless, protracted time coupled with silence to earlier met persons, do indeed dull the spontaneity and lack of premeditation of any later declarations. In this case the decedent did not mention the accident to his fellow-worker in the garage, nor to the guard at the gate where he signed out, nor to any other person at his place of work. These

circumstances cast a shadow on the spontaneity of the statements he made to his wife, and we hold therefore that they were inadmissible. *Heite v. Vare Construction Company,* 129 Pa. Super. 204, 195 A. 437 (1937); *Ceccato v. Union Collieries,* 141 Pa. Super. 440, 15 A. 2d 401 (1940); *Schuch v. Harbison's Dairies,* 150 Pa. Super. 582, 29 A. 2d 216 (1942).

In *Giordano v. Bianco,* 204 Pa. Super. 219, 222, 223, 203 A. 2d 396, 398 (1964), the Court cited *Commonwealth v. Stallone,* 281 Pa. 41, 126 A. 56, 58 (1924): "'. . . "Although the question of time between the occurrence and the declarations is an important one, it is not conclusive. Under particular circumstances, the res gestae may extend over a considerable period of time, and the criterion is whether the declarations are made under such circumstances as will raise a reasonable presumption that they were spontaneous utterances created by the transaction itself, and so soon thereafter as to exclude the presumption of premeditation and design." And as President Judge CARROLL of the court below puts it, "In the instant case there is ample evidence to support the Board's finding that the statement of the decedent was generated by the excitation of the injury received rather than premeditation or design on his part. With this finding we concur. It must be noted that the decedent at the time of his injury was working alone. There were no fellow workers or foreman to whom he might relate the happening of the accident or from whom he might seek aid. Accordingly, he sought the haven of his home, and upon his arrival and approximately 30 minutes after the accident, for the first time had opportunity to explain what had happened and to seek aid from his wife. In view of these circumstances, the delay in time did not destroy his spontaneity of the utterance and the testimony was admissible."'"

Under this same reasoning, we would likewise hold the statements made by the decedent to Dr. Cannon as not falling within the *res gestae* exception to the hearsay rule, except for the fact that the statements made by the decedent to Dr. Cannon were given to him in the course of the decedent seeking medical advice and treatment. The physician's testimony in this case makes it clear that it was necessary for the physician to determine from his patient what his complaints and symptoms were so that he could properly treat him. We have recently held in the case of *Scannella v. Salerno,* not yet reported but filed in this court on April 13, 1971, that so long as the statements contained in the patient's history taken from the hospital record were pathologically germane to the condition which caused the patient to come to the hospital for treatment, that such statements were admissible as an exception to the hearsay rule. There is a strong presumption that statements made by a patient to his doctor concerning his complaints for which he seeks medical attention will be true and accurate. It seems to us to be without merit to argue that a patient would mislead his doctor at the very time he is seeking help, that is unless credible evidence is presented that the patient had reason to misrepresent at the time he initially sought medical attention.

We next take up the issue of admissibility of the statements made by the decedent and recorded in the patient's history contained in the hospital records. These statements indicate that the decedent was hit on the head by a garage door while at work. These statements found in the hospital records were admitted by the referee in support of the causal connection between the injury and the decedent's work for the appellant-employer. As we held in *Scannella, supra,* so long as the statements recorded in the hospital records are

pathologically germane to the physical or mental condition which caused the patient to come to the hospital for treatment, those statements are admissible.

It should be remembered that the Workmen's Compensation Law was intended by the Legislature to benefit the workers of this Commonwealth and their families. There are times within the working life of an employee when an accident and injury occur while he is alone. The intent of the Legislature was to permit all reasonably competent evidence before the Board, so as to enable them to reach a fair determination in the disposition of compensation claims. The legislative intent was not to restrict or deny legitimate claims. When, however, facts are developed in the record before the Board that an employee or his family is attempting to color or alter some facts so as to improperly obtain an award, the Board and the reviewing courts are duty bound to prevent such a subterfuge. In cases wherein there are disputed facts upon which reasonable men could differ, then it is incumbent upon the Board to sift the evidence presented and make findings of fact and conclusions of law. The Board does this, utilizing its expertise and legislative discretion to arrive at a reasonable and lawful conclusion. After a case has been properly heard by a referee who makes an award which is thereafter affirmed by the Board and a lower court on review, a heavy burden then devolves upon the appellant in a subsequent appeal. This burden requires appellant to show that the Board abused its discretion or clearly committed an error of law.

Lastly, the appellants argue generally that there was not sufficient medical evidence in this record to find that the decedent died from the injuries sustained. In this case, the appellee in support of her claim presented the testimony not only of the family physician who ordered the decedent into the hospital on two occasions,

but also two medical experts who testified that the cause of death, to the best of their medical knowledge, was a blow to the decedent's head, which resulted in a sub-dural hematoma which became secondarily infected, culminating in death-causing sub-dural empyema. The appellants presented the testimony of two medical experts who admitted that the hematoma could have been caused by a blow, although their ultimate finding was that it could have been caused by other infections as well.

In the case of *Jessie v. Dash,* 194 Pa. Super. 1, 9, 165 A. 2d 280, 284 (1960), the court stated: "The findings of fact of the compensation authorities cannot be disturbed unless there is no competent evidence to support them. Icenhour v. Freedom Oil Works Company, 136 Pa. Super. 318, 7 A. 2d 152 (1939). This rule applies to medical questions with the same force and effect as it does to any other factual issue, for it is not for the courts to attempt to reconcile conflicting medical testimony or to review as a matter of law the credibility of medical witnesses. (Citing cases)." The law is clear that where there is a difference of opinion among medical experts as to the existence of the causal relationship between the injury and death thereafter, the Board has been given the discretion by the Legislature to sift and evaluate the evidence and the various medical testimony and thereon base findings of fact. An appellate court is not a super board of medical review but rather charged with the task of determining the existence of substantial evidence upon which the Board based its determination.

A review of the entire record of this case leads us to the conclusion that there was no abuse of discretion nor error of law made by the Board in reaching its final adjudication, and therefore we affirm the order of the court below.